IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMY FORREST, | ) |
| Plaintiff, | ) |
| v. | ) |
| WAFFLE HOUSE, INC., AND GARY BRACKIN, | ) CIVIL ACTION NO. 1:2005cv572-T |
| Defendants. | ) |

## DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS

COME NOW defendants in the above-styled action, Waffle House, Inc. ("Waffle House") and Gary Brackin ("Brackin") (collectively "defendants"), and in reply to Plaintiff Amy Forrest's Response to Defendants' Motion to Dismiss, say as follows:

### INTRODUCTION

Waffle House established in its Motion to Dismiss that arbitration was the sole forum for the resolution of Forrest's claims. Forrest admits that the Arbitration Agreement covers these claims but argues only that it is unenforceable because of the affirmative defenses of unconscionability and economic duress. Forrest has offered no cases that support her claims of unconscionability or economic duress under these circumstances. Because Forrest has offered no relevant facts to prove these defenses and they fail as a matter of law, Waffle House's motion must be granted.

### FACTS

Forrest does not dispute the facts offered by Waffle House but contends the agreement is unconscionable and that she signed it under economic duress. Ptf. brf., pp. 1-2. She admits that

1386079

she had the opportunity to read the Arbitration Agreement.  Forrest aff., ¶ 3.  She does not argue that she did not understand the agreement or have the chance to ask questions regarding the agreement.  *Id.*  She admits she had at least one week to consider the agreement.  *Id.*  She signed the agreement on March 31, 2002 understanding that it was a condition of her continued employment.  *Id.*  She filed an EEOC charge against Waffle House in December 2004 and filed this action on June 15, 2005.  *See* Complaint.  She agrees that her claims in this action are covered by the agreement.  Ptf. brf., p.2, ¶ 1.

## ARGUMENT

Alabama law is clear that continued at-will employment is sufficient consideration for the signing of an arbitration agreement covering all claims arising out of employment.  The law is clear that arbitration is not a remedy and requiring employees' claims to be submitted to arbitration is not unconscionable.  The law is also clear that conditioning continued employment on signing an arbitration agreement is not unconscionable.  Forrest has failed to show that the mutually-binding Arbitration Agreement, similar to agreements regularly enforced by Alabama and federal courts, contained grossly favorable terms or that Waffle House had overwhelming bargaining power regarding the signing of the agreement.  Nor has she shown that Waffle House made wrongful or unlawful threats to her that would constitute economic duress.  Thus, Waffle House's motion must be granted.

I.   **The Arbitration Agreement Is Not Unconscionable.**

Waffle House and Forrest's Arbitration Agreement is not unconscionable.  Both federal and Alabama law favor arbitration and resolve all doubts in favor of compelling arbitration. Forrest has the burden of proving unconscionability in response to Waffle House's motion to dismiss and compel arbitration.  *See Gayfer Montgomery Fair Co. v. Austin*, 870 So.2d 683, 689 (Ala. 2003) (citing *Green Tree Financial Corp. of Alabama v. Wampler*, 749 So.2d 409, 415

(Ala. 1999)).  Forrest must prove that the Arbitration Agreement contained "(1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power."  *Id.*  She can prove neither.  Waffle House's motion must be granted.

      A.      **The Arbitration Agreement's Terms Are Not Unreasonably Favorable To Waffle House.**

Contrary to plaintiff's brief, p. 4, ¶ 2, an arbitration agreement is not unconscionable that covers nearly all claims an employee may bring against an employer, its officers, directors, employees, or agents, arising out of the employee's employment or termination of employment that reserves the question of arbitrability for the arbitrator.  Both Alabama and federal law provide that an arbitration provision that clearly directs the arbitrator to decide the question of arbitrability is enforceable.[1]  Alabama courts have enforced arbitration agreements between employers and employees that are as broad and broader than the Arbitration Agreement.[2]  Forrest has failed to show a single case where an agreement with similar terms was invalidated.

Contrary to plaintiff's brief, pp. 4-5, plaintiff's cases do not demonstrate that the Arbitration Agreement's terms "are grossly favorable to a party."  Plaintiff cites *American*

---

[1] *See Jim Burke Automotive, Inc. v. McGrue*, 826 So.2d 122, 132 (Ala. 2002) (enforcing arbitration agreement covering "all disputes, controversies, or claims of any kind and nature between the parties arising out of or in any way related to the within contract" and that reserved aribtrability question for arbitrator); *Klay v. United HealthGroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2003).

[2] *See Ameriquest Mortgage Co. v. Bentley*, 851 So.2d 458, 460 (Ala. 2002) (enforcing arbitration agreement for at-will employee covering "all claims . . . whether or not arising out of my employment (or its termination) . . . that I may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise"); *Gadsden Budweiser Distr. Co. v. Holland*, 807 So.2d 528, 529, 531 (Ala. 2001) (enforcing arbitration agreement for at-will employee covering "all disputes or claims between me and the distributorship, its managers or employees, arising out of my employment or the termination of my employment" even when the employer was not mutually obligated to arbitrate its claims against the at-will employee).  The breadth of claims the *Bentley* agreement covered exceeded the breadth of claims here and the breadth of the *Holland* agreement equaled the breadth of the agreement here.

*General Finance Corp. v. Branch*, 793 So.2d 738, 748 (Ala. 2000) and *Anderson v. Ashby*, 873 So.2d 168 (Ala. 2003), in support of her argument that the Arbitration Agreement contains terms grossly favorable to Waffle House. Ptf brf., p. 4, ¶ 2. Both *Branch* and *Anderson*, cases involving arbitration agreements in loan transactions, found an arbitration agreement to contain grossly favorable terms to the borrower where the lender's agreement (1) required the borrower to arbitrate all claims against the borrower but did not require lender to arbitrate its claims against the borrower; (2) in so doing, limited the borrower's right to seek full redress of its claims before the arbitrator, limiting the monetary amount the borrower could recover; [and] (3) applied to every "dispute or controversy *relating to* every actual or *potential* transaction - whether *past*, present, or future - and to every person, whether signatory or nonsignatory to any document involved in such a transaction between the parties." *Branch*, 793 So.2d at 748-50; *Anderson*, 873 So.2d at 176-77 (noting that arbitration agreement was identical to agreement in *Branch*).

The *Branch* court cited *Roberson v. Money Tree of Alabama, Inc.*, 954 F.Supp. 1519, 1526 n.8 (M.D. Ala. 1997) (Thompson, J.), which found no unconscionability, but noted that "[t]he court therefore does not have before it whether a contract that not only requires the borrower to arbitrate any claim, while reserving for the lender the right to seek judicial remedies in the eventuality of default, but *also restricts the borrower's range of relief in arbitration*, is unconscionable" in determining that the lender's agreement was unconscionable. 793 So.2d at 749-50. Referring to the above quote from *Roberson*, the *Branch* court held "[t]hat of course, is *this* case. It is one in which the Lenders have reserved for themselves the right to *full redress* for *their* claims, but denied that right to Branch. In other words, the contract limits not only the right

to a specific *forum*, but the *right to a remedy itself*.  *Id.* at 750 (emphasis in original).[3]  Here, Waffle House's agreement limits the right to a specific forum but allows all available remedies. Thus, it is not unconscionable.

Waffle House and Forrest's Arbitration Agreement is clearly distinguishable from the agreement in *Branch* and *Anderson*.  It is mutually binding: the Agreement covers all claims that "I may have against Waffle House . . . or that Waffle House may have against me," with a few exceptions. Agreement, ¶ 2, "Exhibit A" Aff. of Marta Aguirre.  It allows for all remedies she could have in court: the "Arbitrator shall have the power to award any types of legal or equitable relief available in a court of competent jurisdiction, including, but not limited to, attorney's fees and costs, to the extent such relief is available under law." *Id.* at ¶ 7.  Thus, unlike *Branch* or *Anderson*, the Agreement binds the employer to the extent of the employee and allows the employee full redress of its claims.  The agreement is not unconscionable.  In fact, it is indistinguishable from the arbitration agreement in *Potts v. Baptist Health System, Inc.*, 853 So.2d 194, 205-07 (Ala. 2002).  As with *Potts*'s dispute resolution process, Waffle House's "was equally binding on the parties, and it did not limit the arbitrator's ability to provide remedies under Alabama law. . . . Thus, the type and degree of inequality of contractual provisions found in *American General Finance v. Branch* are not here present."  Just as in *Potts*, the plaintiff

---

[3] The effective reason the *Branch* and *Ashby* agreements were found unconscionable is the fact that the agreements limited the potential relief that the borrowers could recover while not doing so for the lender.  Although the court discussed the lack of mutuality, exhaustive breadth of the agreement, and the arbitrability question invested with the arbitrator as factors contributing to the unconscionabiltiy of the agreement, the Alabama Supreme Court has regularly enforced agreements with no mutuality, exhaustive breadth, and reserved arbitrability question and found them not unconscionable.  *See Jim Burke*, 826 So.2d at 128, 132; *Holland*, 807 So.2d at 529, 531; *Bentley*, 851 So.2d at 461, 463; *Ex parte McNaughton*, 728 So.2d 592, 598-99 (Ala. 1998) (enforcing broad at-will employment arbitration agreement with no mutuality of obligation because employee's remedies were not limited).

cannot prove that the Arbitration Agreement here contained unreasonably favorable contractual terms, and thus, the plaintiff cannot satisfy her burden of showing unconscionability.[4]

As the Alabama Supreme Court decided in *Gayfer Montgomery Fair Co. v. Austin*, 870 So.2d 683, 687, 691 (Ala. 2003), an arbitration agreement between an employer and an at-will employee, covering "any claims that could be made in a court of law," that is "equally binding on the parties," does "not limit the damages," did not charge her an exorbitant arbitration fee, and allowed representation by an attorney, was not unconscionable. The plaintiff could not show grossly favorable terms in those circumstances, because limiting the forum in which claims may proceed is not grossly favorable as a matter of law. *Id.* at 691. Because "[m]ere inequality of bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context," *id.*, and Forrest has shown no grossly favorable terms, she has not proved that the agreement is unconscionable.

> **B.  Forrest Has Not Shown That Waffle House Had Overwhelming Bargaining Power.**

Contrary to plaintiff's brief, Waffle House did not have overwhelming bargaining power related to the Arbitration Agreement. Plaintiff cites only two cases, *Lloyd v. Service Corp. of Alabama*[5] and *Taylor v. Leedy & Co., Inc.*[6], involving exculpatory clauses in lease agreements,

---

[4] Also, just as in *Potts*, *id.* at 207, the Agreement provides that Waffle House will bear all "filing fees, administrative costs, and fees and costs of the Arbitrator." Arb. Agreement, ¶ 8.

[5] Plaintiff cites *Lloyd v. Service Corp. of Alabama*, 453 So.2d 735, 736, 739-40 (Ala. 1984), which found an exculpatory clause holding a lessor "free and harmless from any and all liability for claims or damages" on the leased property to the lessee. The Court noted that "[e]xculpartory contract provisions have, in various other circumstances, been found by this court to be void on the grounds of being contrary to public policy," *Id.* at 737, and found that "the enforcement of 'unbargained for' exculpatory clauses in residential leases against the best interests of the citizens of Alabama and contrary to public policy." *Id.* at 740. Cases involving exculpatory provisions are irrelevant to this case, because arbitration provisions are favored by the courts and all doubts are resolved in favor of arbitration. *See Ameriquest Mortgage Co. v.*

in support of her contention that Waffle House had overwhelming bargaining power over plaintiff with regard to the Arbitration Agreement. *See* Ptf. brf., p. 5, ¶ 1. In *Green Tree Financial Corp. of Alabama v. Wampler*, 749 So.2d 409 (Ala. 1999),[7] the Alabama Supreme Court distinguished these cases involving exculpatory clauses from cases involving arbitration agreements, distinguishing *Lloyd* by noting that "after commenting on the proliferation of standardized contracts, this Court struck down an exculpatory clause in a residential lease contract as unconscionable, on the ground that it violated public policy. As previously noted, we are not at liberty to treat arbitration agreements as inherently unfair or oppressive." 749 So.2d at 416-17. Thus, *Lloyd* and *Taylor*, plaintiff's exculpatory clause cases, have no bearing on this case.[8]

---

*Bentley*, 851 So.2d 458, 463 (Ala. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

[6] Plaintiff's citing of *Taylor v. Leedy & Co., Inc.*, 412 So.2d 763, 764 (Ala. 1982), is puzzling, as *Taylor* does not address the unconscionability of the agreement but rather finds that an exculpatory provision does not apply to a latent defect.

[7] In *Wampler*, the Alabama Supreme Court held that an arbitration provision was not unconscionable that bound one party to arbitrate but not the other and left for the arbitrator the issue of arbitrability. 749 So.2d at 415-17. The Court found instructive that "[t]he FAA establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 416 (citing *Moses H. Cone*, 460 U.S at 24-25.

[8] In *Roberson*, Judge Thompson similarly distinguished *Lloyd*: "This case is unlike *Lloyd*, which involved outright waivers of landlord liability for the commission of certain torts. The Robersons have not argued that an arbitrator cannot hear liability claims against the defendants or cannot award the full panoply of relief available in state courts under Alabama law. Nor have they shown in any way that the arbitration clause itself is serving or being used as a license to engage in usurious or oppressive lending practices through waiver of liability for intentional torts, such as fraud or intentional misrepresentation. Without such showings, the court cannot say that requiring the Robersons to make their case within an arbitral forum is inherently oppressive or unreasonably unfavorable to the Robersons." 954 F.Supp. at 1526.

As the Alabama Supreme Court held in *Potts*, an employer does not have such overwhelming bargaining power as to constitute unconscionability when requiring an at-will employee to sign an arbitration clause to continue her employment:

> "[T]he possibility of termination flowing from Potts's refusal to sign an acknowledgement form is not, in and of itself, unconscionable. Moreover, although Potts argues that her family would suffer financial hardship if she failed to sign the acknowledgement and was then fired, Alabama law does not allow a mere showing of financial hardship to invalidate an arbitration agreement.

*Potts*, 835 So.2d at 206.[9] Because Forrest has not shown overwhelming bargaining power, the Agreement is not unconscionable.

## II.     Forrest Cannot Establish The Affirmative Defense Of Duress.

Forrest's argument that the Arbitration Agreement is invalid because she signed it under economic duress is utterly frivolous. The defense of economic duress requires "wrongful acts or threats" and "unlawful and unconscionable pressure." Waffle House's conditioning Forrest's continued employment on the signing of a mutually binding arbitration agreement has been recognized and authorized by Alabama and federal courts. There is nothing unfair or unconscionable about arbitration provisions, in employment or otherwise, and Forrest has failed to show any evidence in support of her economic duress defense. Thus, Waffle House's motion must be granted.

Contrary to plaintiff's brief, ptf. brf. p. 4-5, courts do not disfavor arbitration agreements. In fact, both Alabama and federal courts have held that courts favor arbitration:

> The FAA establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the

---

[9] In finding that her employer did not have overwhelming bargaining power to make the arbitration provision unconscionable, the Court noted that Potts had failed to show that she would have been unable to obtain employment elsewhere or that her situation was somehow different than other at-will employees. *Id.* at 205-06. Forrest has not made such a showing here, either, and thus, the Agreement is not unconscionable.

problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.[10]

Alabama courts regularly enforce arbitration agreements executed with the sole consideration as continued at-will employment.[11]   "Arbitration is not inherently unconscionable, nor is it a remedy . . . . '[T]here is nothing inherently unfair or oppressive about arbitration clauses.'"[12]

Contrary to plaintiff's brief, ptf. brf., p. 6, ¶ 2, she cannot establish any of the elements of the economic duress defense.   "Economic duress consists of '(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer.'"  *Clark v. Liberty Nat'l Life Ins. Co.*, 592 So.2d 564, 567 (Ala. 1992), cited in plaintiff's brief on page 6, (citing *International Paper Co. v. Whilden*, 469 So.2d 560, 562 (Ala. 1985)).   Forrest has shown no wrongful acts or threats.  As described above, conditioning continued employment on the signing of an arbitration agreement is an authorized practice under Alabama and federal law.  *See Bentley*, 851 So.2d at 464; *Kelly v. UHC Management Co.*, 967 F.Supp. 1240, 1260 (N.D. Ala. 1997).   Nor can she show that she would suffer financial distress from being required to sign the arbitration agreement.[13]

---

[10] *Green Tree Financial Corp. of Alabama v. Wampler*, 749 So.2d 409, 416 (Ala. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

[11] *See, e.g.*, *Baptist Health System, Inc. v. Mack*, 860 So.2d 1265, 1274 (Ala. 2003); *Ameriquest Mortgage Co. v. Bentley*, 851 So.2d 458, 464 (Ala. 2002) ("The Court has consistently held . . . that providing continued at-will employment is sufficient consideration to make an employee's promise to arbitrate binding."); *Kelly v. UHC Management Co.*, 967 F.Supp. 1240, 1260 (N.D. Ala. 1997) (Blackburn, J.).

[12] *Ex parte McNaughton*, 728 So.2d 592, 597 (Ala. 1998) (citing *Kelly*, 967 F.Supp. at 1257 (citing *Coleman v. Prudential Bache Securities, Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986)).

[13] "[T]he federal policy favoring arbitration rules out any judicial suspicion of the desirability of arbitration and the competence of arbitral tribunals."  *Weaver v. Florida Power & Light Co.*, 172 F.3d 771, 774 (11th Cir. 1999).

Moreover, "Alabama law does not allow a mere showing of financial hardship to invalidate an arbitration agreement."[14] Likewise, she has failed to satisfy her burden of showing the absence of any reasonable alternative.[15]

Forrest's cases compel the granting of defendant's motion. In *Clark*, cited ptf. brf. p. 6, the Alabama Supreme Court held that "[t]he fact that Liberty National required Clark to sign the new contract to continue his employment at Liberty National does not amount to economic duress. . . . There was sufficient and valid consideration for Clark's signing the contract. This consideration was his continued employment at Liberty National." 592 So.2d at 567. Contrary to plaintiff's brief, Forrest's signing of a mutually binding arbitration agreement was not a "special, unusual, or extraordinary situation" "where extortive measures are employed" or "improper or unjustified demands are made." *Id.* at 563. On the contrary, Waffle House's actions were authorized by Alabama and federal law.

Contrary to plaintiff's brief, p. 7, ¶ 1, threatening an at-will employee's job for failing to sign an arbitration agreement is not "unlawful or unconscionable pressure," as necessary for economic duress. *See Whilden*, 469 So.2d at 563.[16] Lawful pressure of conditioning continued

---

[14] *Potts*, 853 So.2d at 206; *see also Wampler*, 749 So.2d at 416 ("Because the general principles of Alabama contract law do not excuse performance on the grounds of financial hardship, we cannot allow a party's poverty, standing alone and independent of other considerations justifying a finding of unconscionability, to constitute a defense to enforcement of an arbitration agreement.").

[15] *See Potts*, 853 So.2d at 205-06 (holding that plaintiff had failed to show she lacked a meaningful choice because she did not show she would have been able to obtain employment elsewhere or that her attempt to do so would require a considerable expenditure of time and resources).

[16] In *Whilden*, the court affirmed the trial court's finding that an indemnity agreement was executed under economic duress because International Paper induced Whilden to sign the indemnity agreement to obtain money already due to Whilden and by failing to disclose the known liability that Whilden would assume with the indemnity agreement. *Id.* at 562-63. Here, there was no such bad faith. Forrest was an at-will employee. Her employment could be

employment on her signing was applied.  She admits she had at least a week to decide whether to sign.  She does not allege that she did not understand the Agreement.  She signed the agreement and thus was able to continue her employment for 2 years before the filing of this suit.  Because Forrest has not shown any evidence to establish that she signed the Arbitration Agreement under economic duress, Waffle House's motion must be granted.

## CONCLUSION

Forrest's only arguments that the Arbitration Agreement should not apply to her claims in this case are that the Agreement was unconscionable and that it was executed under economic duress.  As demonstrated above, both of these defenses fail as a matter of law.  Forrest has produced no evidence sufficient to establish any of the elements of these defenses.  Arbitration agreements are favored under federal and Alabama law, and defendant's motion to dismiss must be granted.

                                                                      */s/ Ronald W. Flowers, Jr.*
                                                                      John J. Coleman, III (COL044)
                                                                       Ronald W. Flowers, Jr. (FLO031)
                                                                       Attorneys for Defendants

OF COUNSEL:

BURR & FORMAN LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

---

terminated at any time.  She does not allege that Waffle House misled her regarding the terms of the contract.

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been served on the following by directing same to his office address through first-class, United States mail, postage prepaid, on this the 12th day of August, 2005:

D. Lewis Terry, Jr.
Jackson, Rhodes, Sherrer & Terry, P.C.
P.O. Box 7122
Dothan, AL 36302-7122

                                                 ___/s/ Ronald W. Flowers, Jr._____
                                                 OF COUNSEL