IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| AMY FORREST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:05cv572-MHT |
| | ) | (WO) |
| WAFFLE HOUSE, INC. and | ) | |
| GARY BRACKIN, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Plaintiff Amy Forrest brought this lawsuit against
defendants Waffle House, Inc. and Gary Brackin in June
2005, asserting federal claims and various state-law
torts.  The court subsequently granted the defendants'
motion to compel arbitration, which commenced in November
2010.  The arbitrator found in favor of Forrest on her
state-law claims, awarding her $ 500,000 in damages, and
in favor of the defendants on the federal claims.  Now
before the court is the defendants' motion to vacate that
award pursuant to § 10 of the Federal Arbitration Act
("FAA"), 9 U.S.C. § 10, and Forrest's motion to confirm.

For the reasons that follow, the defendants' motion to vacate the award will be denied, and Forrest's motion to confirm granted.

## I.  BACKGROUND

Forrest brought this action against her former employer (Waffle House) and her former supervisor (Division Manager Brackin), alleging numerous instances of sexual harassment and inappropriate touching.  The defendants insisted that an arbitrator, rather than this court, resolve the merits of Forrest's claims and moved to compel arbitration.  Although Forrest resisted, the defendants prevailed and arbitration commenced on June 7, 2010.

The arbitration proceedings included nearly three days of witness testimony and all parties submitted written briefs.  After reviewing the evidence and considering the parties' arguments, the arbitrator issued a well-reasoned 16-page award.  He determined that

2

Forrest's federal claims (charging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1982a, 2000e through 2000e-17) were time-barred, but nevertheless found in her favor on her state claims of invasion of privacy, assault and battery, and outrage and awarded her $ 250,000 in "economic damages" and $ 250,000 for "emotional distress." Interim Award 16, attachment to Defs.' Mot. to Vacate (Doc. No. 18).

In reaching that conclusion, the arbitrator found that Forrest suffered "mental distress, shame, and humiliation" as a result of "Brackin's[] conduct during her employment." Id. at 15. That conduct included, among other things, inappropriate and unwelcomed touching of a sexual nature. When Forrest tried to end this harassment by complaining about Brackin's conduct through the appropriate channels, "those efforts went for naught with [Waffle House] management" and the harassing and assaultive behavior continued. Id.

3

Although the defendants moved to compel arbitration, helped select the arbitrator, and prevailed on Forrest's federal claims, they remain unhappy with the arbitrator's decision and have asked this court to vacate the award. In support of that request, they raise two separate grounds for vacatur. First, they argue that the arbitrator exceeded his authority under the arbitration agreement and therefore the award should be vacated pursuant to 9 U.S.C. § 10(a)(4). Second, they submit that the award was issued with "manifest disregard of the law" and should therefore be vacated pursuant to Montes v. Shearson Lehman Brothers, Inc., 128 F.3d 1456 (11th Cir. 1997). Forrest has responded by asking the court to confirm the arbitral award and sanction the defendants for making frivolous contentions.


## II.   ANALYSIS

Much has been written about the role of courts in policing arbitral awards. The common theme in all recent

4

opinions is that a federal court's role is "narrowly limited." <u>Booth v. Hume Publ'g, Inc.</u>, 902 F.2d 925, 932 (11th Cir. 1990). This preserves one of the key benefits of arbitration: allowing parties to avoid litigation costs by resolving their disputes outside of the courts. <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 123 (2001).

The limited scope of judicial review is embodied in the FAA, which "presumes that arbitration awards will be confirmed" and directs courts to do so unless one of the "four narrow bases" for vacatur enumerated in 9 U.S.C. § 10(a) applies.[1]   <u>Brown v. Rauscher Pierce Refsnses,</u>

───────────────

1.   9 U.S.C. § 10(a) states that a district court may vacate an arbitral award:

> "(1) where the award was procured by corruption, fraud, or undue means;
>
> "(2) where there was evident partiality or corruption ... ;
>
> "(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing[;] ... or in refusing to
>
> (continued...)

<u>Inc.</u>, 994 F.2d 775, 778-79 (11th Cir. 1993).  At issue

here is 9 U.S.C. § 10(a)(4).  That provision permits

courts to vacate an arbitral award if the arbitrator

exceeds the authority delegated to him by the arbitration

agreement.

In addition to those four statutory grounds for

vacatur, the Eleventh Circuit Court of Appeals previously

"recognized three non-statutory bases for vacating an

arbitration award."  <u>Peebles v. Merrill Lynch, Pierce,</u>

<u>Fenner & Smith Inc.</u>, 431 F.3d 1320, 1326 (11th Cir.

2005).[2]  While Forrest questions the continuing vitality

_____

(...continued)
     hear evidence pertinent and material to
     the controversy; or of any other
     misbehavior by which the rights of any
     party have been prejudiced; or

     "(4) where the arbitrators exceeded
     their powers, or so imperfectly executed
     them that a mutual, final, and definite
     award upon the subject matter submitted
     was not made."

     2.  The three non-statutory grounds permit vacatur if
(1) the award is "arbitrary and capricious," (2) it
                                        (continued...)

6

of that jurisprudence, the defendants submit that the award should be vacated on the non-statutory ground that it evinces a "manifest disregard of the law."   See Montes, 128 F.3d at 1462.


### A.  Scope of the Arbitrator's Authority

The arbitrator's role is "to interpret and enforce" the arbitration agreement.   Stold-Nielsen S.A. v. AnimalFeeds Int'l Corp., 557 U.S. ___, ___, 130 S. Ct. 1758, 1767 (2010). When the arbitrator rejects that role and refuses to comply with the agreement's provisions, the award must be vacated.   Cat Charter, LLC v. Schurtenberger, 646 F.3d 836, 843 (11th Cir. 2011).

The defendants identify two provisions of the arbitration agreement with Forrest that they insist were not followed.  They argue that the arbitrator (1) ignored the requirement that he apply Alabama law to Forrest's

───────────────

(...continued)
"evinces a manifest disregard of the law," or (3) its enforcement would be "contrary to public policy." Peebles, 431 F.3d at 1326.

7

state-law claims; and (2) failed to "render an award and opinion in the form typically rendered in labor arbitrations." Arb. Agreement 2, attachment to Defs.' Mot. to Vacate (Doc. No. 18). The court will address those arguments in turn.

First, the defendants surmise that the arbitrator applied Florida (rather than Alabama) law to this dispute.[3] Were the defendants able to make such a showing, this court would arguably have no choice but to vacate the award. But they have only the most circumstantial of evidence to support their theory, and that evidence is wholly undermined by the arbitrator's own words.

The arbitral award itself demonstrates both that the arbitrator understood that Alabama law governed Forrest's tort claims and that he applied that law to the best of his ability. The arbitrator's decision begins by

_____

3. The arbitrator was formerly a Florida state-court judge and so the defendants assume that he applied Florida law, presumably out of habit.

8

explaining that Forrest raised both "Federal claims ... for relief under Title VII and State claims for invasion of privacy under Alabama law, sexual conduct constituting the tort of outrage and a claim against ... Gary Bracken, for assault and battery." Interim Award 2, attachment to Defs.' Mot. to Vacate (Doc. No. 18) (emphasis added). This clearly demonstrates that the arbitrator knew that Alabama law applied. Nowhere does the award mention Florida, cite Florida law, or otherwise imply that anything other than Alabama law governed Forrest's tort claims.

Indeed, the arbitrator cited only Alabama case law in support of his decision on the state-law claims. He expressly relied on Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F.3d 1287 (11th Cir. 2007), to resolve Forrest's claim for invasion of privacy. Baldwin requires "a plaintiff in Alabama [to] show that the defendant's conduct was so outrageous that it caused the plaintiff mental suffering, shame, or humiliation" in

9

order to prevail on an invasion of privacy claim.   480 F.3d at 1308.   Relying on that standard, the arbitrator specifically found that Forrest "suffered mental distress, shame, and humiliation" as a result of Brackin's conduct.   Interim Award 15, attachment to Defs.' Mot. to Vacate (Doc. No. 18).   Given that the arbitrator specifically stated that Alabama law governed Forrest's tort claims, cited only to cases applying Alabama law in reaching his decision on those claims, explicitly referenced the appropriate state-law standard on Forrest's invasion of privacy claim, and never once mentioned the substantive law of any other State, there can be no doubt that he applied Alabama law in reaching his decision.

For their part, the defendants cite to cases (presumably the same ones they cited in their submissions to the arbitrator) that they argue require a different result from the one announced in the arbitral award. Forrest counters those cases with citations of her own,

which she says prove that the awarded damages are
rightfully hers.

That debate is immaterial: "It is not enough for [the
defendants] to show that the [arbitrator] committed an
error--or even a serious error." AnimalFeeds, 130 S. Ct.
at 1767. As long as he intended to apply Alabama law and
made a reasonable effort in doing so, it simply does not
matter whether this court agrees with the manner in which
he applied it.[4]  See White Springs Agric. Chems., Inc. v.

---

4. Even though the precise contours of Alabama law
are immaterial, it is worth pausing for a moment to
highlight the manner in which the defendants chose to
brief this case.  In a subsection of their motion to
vacate entitled "Alabama Does Not Recognize Harassment
Torts," they quote Machen v. Childersberg Bancorp., 761
So.2d 981, 983 n.1 (Ala. 1999), for the proposition that
"Alabama 'does not recognize an independent cause of
action for sexual harassment.'"  Defs.' Mot to Vacate 8
(Doc. No. 18).  They then argue that the arbitrator
"based his award on such a claim even though it does not
exist under the law the agreement directs him to apply."
Id.  This argument is frivolous for two reasons, either
one of which would be sufficient to raise suspicion that
the defendants are primarily motivated by the improper
purpose of causing unnecessary delay.

First, the defendants misrepresent Machen.  The
(continued...)

<u>Glawson Invs. Corp.</u>, 660 F.3d 1277, 1281 (11th Cir. 2011)

("To the extent White Springs contests the panel's

interpretation of Florida law, the FAA does not empower

---

(...continued)

entire paragraph to which they cite states: "Alabama does
not recognize an independent cause of action for sexual
harassment.   <u>Instead, claims of sexual harassment are</u>
<u>maintained under common-law tort theories such as assault</u>
<u>and battery, invasion of privacy, ... and outrage</u>."
<u>Machen</u>, 761 So.2d at 983 n.1 (emphasis added). Far from
precluding Forrest's state-law claims, which were based
solely on assault and battery, outrage, and invasion of
privacy, <u>Machen</u> makes clear that Alabama law embraces
tort damages for the precise claims raised in this case.
<u>Machen</u> therefore stands for the opposite of what the
defendants allege, and the quotation provided in their
brief appears to have been manipulated in order to
conceal that fact from the court.

Second, the award was not based on a
sexual-harassment claim.  The arbitrator identified the
claims on which Forrest prevailed in the final two
paragraphs of his award where he states:  "Having
previously determined that Claimant cannot recover under
Title VII EEOC claims, the Arbitrator turns his attention
to the State claims of Claimant, to-wit: invasion of
privacy, outrage, and assault and battery."  Interim
Award 15, attachment to Defs.' Mot. to Vacate (Doc. No.
18).  Nowhere in this portion of the award does the
arbitrator so much as mention "sexual harassment."
Instead, he based his award on the very torts <u>Machen</u>
identifies as the appropriate avenues for relief under
Alabama law.  This makes sense, since Forrest's complaint
did not even allege a state-law harassment claim.

us to review these allegations of legal error."). Otherwise, every time a party disagreed with the arbitrator's interpretation of the governing law (and could convince a court it was right), it would have a valid claim for vacatur under 9 U.S.C. § 10(a)(4). That would wholly undermine "the promise of arbitration," which relies on "the arbitrator being the last decision maker in all but the most unusual cases," B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 913 (11th Cir. 2006), and blatantly contradict the Eleventh Circuit's admonishment that arbitrators "do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party," Cat Charter, 646 F.3d at 843 (internal quotation marks omitted).

If the defendants actually believed that the arbitrator "cho[se] not to apply Alabama law" and "instead applied Florida law," Mot. to Vacate 8 (Doc. No. 18), then they should have pointed this out to the

13

arbitrator.   The arbitration agreement (which Waffle
House drafted) permits a party to "file with the
Arbitrator a motion to reconsider" and requires the
arbitrator to "reconsider the issues raised by the motion
and, promptly, either confirm or change the decision."
Arb. Agreement 3, attachment to Defs.' Mot. to Vacate
(Doc. No. 18).   Had the arbitrator simply "chosen" the
wrong law, he could have corrected that error.   Instead,
unhappy with the result of the arbitration, the
defendants have moved for what amounts to a second
adjudication of Forrest's claims.   But the defendants
previously insisted that an arbitrator, not this court,
should decide the merits of this dispute, and it must now
live with that decision.

Second, the defendants argue that the arbitrator
failed to "render an award and opinion in the form
typically rendered in labor arbitrations."   Arb.
Agreement 2, attachment to Defs.' Mot. to Vacate (Doc.
No. 18).   They suggest that, to comply with that

14

requirement, the arbitrator should have "explain[ed] how [Forrest] suffered 'mental distress, shame and humiliation from the Respondent, Gary Brackin,' when the alleged conduct occurred months before the alleged consequences," and made an explicit finding "that Waffle House was responsible for this conduct" before holding it liable for Brackin's wrongful behavior. Defs.' Mot. to Vacate 10 (Doc. No. 18) (emphasis and internal citation removed). That argument is without merit.

Generally speaking, "an arbitrator need not explain her decision; thus, in a typical arbitration where no specific form of award is requested, arbitrators may provide a 'standard award' and simply announce a result." Cat Charter, 646 F.3d at 844 (citing United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960). However, the parties "may contractually limit or alter ... the form of the award," and an arbitrator exceeds her authority by failing to heed any such limitation. Id. at 843.

15

Here, the agreement required the arbitrator to issue an award "in the form typically rendered in labor arbitration cases."   Arb. Agreement 3, attachment to Defs.' Mot to Vacate (Doc. No. 18).   Whether the arbitrator exceeded his authority therefore depends on the meaning of that phrase. Unfortunately, the agreement leaves it undefined, and the defendants have not bothered to offer evidence regarding the standard practice among arbitrators in this field.   The court must therefore decipher that phrase on its own.

The arbitration agreement offers some assistance.  It requires the arbitrator to comply with the employment-arbitration procedures of the American Arbitration Association ("AAA").   Those procedures instruct arbitrators to "provide the written reasons for the award."   AAA Employment Arbitration Rules and Mediation Procedures 39(c) (2009).   The court can identify no reason why the AAA's standard would be any different from the form typically rendered in labor

arbitrations, and neither party argues that it is.   The
court therefore finds that the phrase "in the form
typically rendered in labor arbitration cases" requires
the arbitrator to provide "written reasons for the
award."

In Cat Charter, the Eleventh Circuit addressed a
provision requiring a "reasoned award," 646 F.3d at 843,
which is no doubt akin to an award containing "written
reasons."   The court noted that the requirement sat
somewhere between the "standard award" typically
permissible in arbitration disputes and the more exacting
requirement that "the arbitrators make 'findings of fact
and conclusions of law.'"   Id. at 844.[5]  Relying on the
dictionary definition of "reasoned," the court concluded
that such an award is "marked by the detailed listing or
mention of expressions or statements offered as a

---

5.   This holding defeats the defendants' attempt to
equate "the form typically rendered in labor arbitration
cases" with a requirement that the arbitrator make
specific findings on every element of every one of
Forrest's claims.

17

justification of ... the decision." Id. (emphasis in original).

With that definition in hand, the appellate court turned to the arbitral award itself, the relevant part of which covers only one column of one page of the federal reporter and looks more like a bulleted list than a judicial opinion. See id. at 841. For the vast majority of claims, the arbitrator identified only the parties and stated which one prevailed. For example, one bullet reads, "On the claim of the Claimant, CAT CHARTER, LLC, for breach of contract by Respondent MTI, we find that Claimant, CAT CHARTER, LLC has proven its claim against MTI by the greater weight of the evidence." Id. No further explanation is given. Another bullet simply states that "All other claims of the Claimants are hereby denied. All counter-claims of the Respondents, MTI and SCHURTENBERGER, are denied." Id. Only on the issue of attorney's fees did the arbitrators provide anything

18

resembling reasoning in support of their decision, stating:

> "the Arbitrators find that Claimants raised a claim that had substantial fact and legal support pursuant to Fla. Stat. § 772.104(3). More specifically, we find that the issues relating to missing resin and the cost of the skiff presented substantial fact issues raised by Claimants, justifying denial of any attorney's fees for Respondents."

Id. On every other issue, the arbitrators simply announced the winner.

Despite the paucity of findings, the Eleventh Circuit had no trouble confirming the award. It explained that "the controversy ... turned primarily upon credibility determinations made by the Panel" and therefore the panel's finding regarding the weight of the evidence was sufficient to make "the reason for the Plaintiffs' victory ... plain[]." Id. at 844-45. The panel had "found the Plaintiffs' witnesses to be more credible," and that was enough to rule in their favor. Id. at 845. As for the fee issue, the arbitrators' brief statements

"clearly provide[d] more than a simple result, and g[a]ve ample justification for the decision of the Panel." Id. That was sufficient for the appellate court to find that the award "was a reasoned one." Id.

Cat Charter commands the same result in this case. Here, too, the primary issue before the arbitrator was one of credibility. Forrest alleged numerous instances of inappropriate conduct, most of which the defendants denied. Because there were several witnesses on each side, the "ultimate decision" was based on "whether the greater weight of the evidence support[ed] the allegations of the Claimant or whether the greater weight of the evidence support[ed] the assertions of the Respondents." Interim Award 5, attachment to Defs.' Mot. to Vacate (Doc. No. 18). The arbitrator described the various evidence put forward during the arbitration and ultimately concluded that "the greater weight of all the evidence" supported Forrest's version of the events. Id. at 15. For the most part, no further explanation was

20

needed: the arbitrator simply believed Forrest's witnesses.  When it was required, however, the arbitrator fleshed out his reasoning with specific findings, such as "Brackin touched [Forrest] in such a manner that amounts to assault and battery," and Forrest "suffered mental distress, shame, and humiliation" because of "Brackin's[] conduct during her employment."  Id. at 15.

When considered in its entirety, the arbitrator's thorough 16-page award detailing Forrest's claims, summarizing the evidence, and explaining his reasoning is far more comprehensive than the bulleted points discussed in Cat Charter.  There can therefore be no doubt that his award constitutes "more than a simple result" and easily meets Cat Charter's standard for a reasoned opinion. This court therefore declines "to narrowly interpret what constitutes a reasoned award to overturn an otherwise apparently seamless proceeding."  Cat Charter, 646 F.3d at 846.

B.  Manifest Disregard of the Law

In what amounts to little more than a rehashing of the same arguments they put forth in support of vacatur under 9 U.S.C. § 10(a)(4), the defendants submit that the arbitrator's decision demonstrates a manifest disregard of Alabama law.  Specifically, they argue that (1) their wrongful acts were insufficiently severe to constitute outrage under Alabama law and the arbitrator therefore erred in finding in favor of Forrest on that claim; (2) Forrest failed to demonstrate causation between the complained of behavior and her emotional distress and so no damages should have been awarded; and (3) Waffle House should not have been held liable for Brackin's wrongful conduct.  According to the defendants, those purported legal errors require that the award be set aside.  The court disagrees.

The seminal case in this circuit on manifest disregard of the law is <u>Montes v. Shearson Lehman Brothers</u>, which held that vacatur is appropriate when the

22

arbitrator is "conscious of the law and deliberately ignore[s] it." 128 F.3d at 1461. This exacting standard requires "something more than a misinterpretation, misstatement, or misapplication of the law," Peebles, 431 F.3d at 1326; there must be "clear evidence" that the arbitrator consciously decided not to follow it, Hercules Steel, 441 F.3d at 910. Put another way, "even a showing of a clear error on the part of the arbitrator is not enough. The arbitration loser must establish ... that the arbitrator actually recognized a clear rule of law and deliberately chose to ignore it." Id. at 911-12.

Recent cases strongly suggest that courts should vacate an award only if four factors are present: (1) the arbitration winner conceded that the law favored the other side, but urged the arbitrator not to follow it; (2) that appeal was noted in the arbitrator's final award; (3) the record reveals no indication that the arbitrator disapproved of the suggestion; and (4) there was only weak factual and legal support for the award

23

issued.   See Montes, 128 F.3d at 1464 (Carnes, J.,
concurring); Hercules Steel, 441 F.3d at 913.   That is
precisely what occurred in Montes, which stands as the
only Eleventh Circuit opinion vacating an arbitral award
for manifest disregard of the law.

Forrest points out that intervening decisions have
called into question the continuing vitality of this
already-narrow ground for vacatur.   In March 2008, the
Supreme Court decided Hall Street Associates v. Mattel,
Inc., 552 U.S. 576 (2008).   The parties in that case had
contractually agreed to permit a more searching review of
the arbitrator's decision than would otherwise be
available under the FAA, and the district court had
invoked that standard in vacating the arbitral award.
Id. at 579-80.   The Supreme Court "granted certiorari to
decide whether the grounds for vacatur and modification
provided by §§ 10 and 11 of the FAA are exclusive."   Id.
at 581.   The Court answered that question in the
affirmative, but left open the possibility of "more

24

searching review based on authority outside the statute."
Id. at 590.

     One month later, in Frazier v. CitiFinancial Corp.,
a panel of the Eleventh Circuit reasoned that the
"judicially-created bases for vacatur are no longer valid
in light of Hall Street." 604 F.3d 1313, 1324 (11th Cir.
2010).[6]   That conclusion was recently reinforced in
Glawson Investments Corp., which cited Frazier for the
proposition that the grounds for vacatur enumerated in
the FAA "are the exclusive means for upsetting an
arbitration award." 660 F.3d at 1280.

     While those two panels appear intent on eliminating
the non-statutory grounds for vacatur, "[t]he law of this
circuit is 'emphatic' that only the Supreme Court or [the
circuit] court sitting en banc can judicially overrule a

---

     6.   The panel's reasoning is somewhat strained, given
that, three days before, the Supreme Court noted that it
had yet to "decide whether 'manifest disregard' survives
[its] decision in Hall Street ... as an independent
ground for review or as a judicial gloss on the
enumerated grounds for vacatur set forth at 9 U.S.C.
§ 10." AnimalFeeds, 130 S. Ct. at 1768 n.3.

prior panel decision." Cargill v. Turpin, 120 F.3d 1366,

1386 (11th Cir. 1997) (quoting United States v. Woodard,

938 F.2d 1255, 1258 (11th Cir. 1991)); see also Hercules

Steel, 441 F.3d at 914 (noting that "prior panel

precedent trumps later decisions").   In this case, the

Supreme Court has expressly refrained from ruling on the

continued vitality of the manifest disregard of the law

standard, see AnimalFeeds, 130 S. Ct. at 1768 n.3, and

the Eleventh Circuit has yet to overrule Montes en banc.

Therefore, "to make assurance double sure," William

Shakespear, Macbeth, Act. 4, sc. 1, the court will assume

that the manifest-disregard-of-law standard is still

applicable and address the defendants' contention on its

merits.

The defendants will find no comfort in this court's

abundance of caution.   Despite having the burden of

persuasion, Peebles, 431 F.3d at 1326, they do not even

attempt to show that any, let alone all, of the four

factors present in Montes apply to the facts of this

case.  Had they tried, they would have found each of them
inapplicable.  The arbitration award does not report that
Forrest urged the arbitrator to abandon Alabama law and
apply instead his own brand of justice.  Nor do the
defendants even allege that Forrest so much as implied
that something other than Alabama law governed this
dispute.

Instead, the defendants point to a few instances
where the arbitrator may have gotten the law wrong.  This
ignores Peebles's admonition that "there must be some
showing in the record, other than the result obtained,"
that the arbitrator decided not to follow the law before
a court can vacate an arbitral award for manifest
disregard of the law.  431 F.3d at 1326.  The defendants'
argument "is simply another way of saying that the
arbitrator clearly erred" and "errors of law are not
enough to justify setting aside an arbitration award."
Hercules Steel, 441 F.3d at 911-12; see also Montes, 128
F.3d at 1462.

## C. Sanctions

Forrest has moved for sanctions against the defendants, alleging that they lacked an objectively reasonable belief that they would prevail on its motion to vacate. Pl.'s Reply 40 (doc. No. 27). While Forrest offers substantial evidence in support of that motion, the court finds that sanctions are unwarranted at this time because, when the defendants filed their briefs in this case, the Eleventh Circuit had not yet decided Cat Charter. However, with the benefit of that decision, the court can see no legal basis for further delay: the defendants should promptly pay Forrest the money that she is owed.

The defendants are reminded that courts "can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions." Hercules Steel, 441 F.3d at 913. By continuing to press its claims without a good basis in

28

the law, the defendants would deprive Forrest of the benefits she bargained for when signing the arbitration agreement: this dispute is rapidly becoming more costly, complicated, and time consuming than it would have been if it had been handled by the judiciary in the first instance. "If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later." Id. Sooner, in this case, means now.

* * *

The defendants insisted on arbitration and received precisely what they had asked for: a speedy and fair resolution of this case embodied in a reasoned decision. To now vacate that award and remand for an entirely new proceeding would "insufficiently respect the value of arbitration and inject the courts further into the arbitration process than Congress has mandated." Cat Charter, 646 F.3d at 846. That is something the court

29

simply will not do.  The defendants' motion to vacate the arbitral award will therefore be denied, Forrest's motion to confirm granted, and the arbitral award issued in this case confirmed.

An appropriate judgment will be entered.

DONE, this the 22nd day of May, 2012.

            /s/ Myron H. Thompson
        UNITED STATES DISTRICT JUDGE